CATHERINE DEMMER v. ERNEST GRUNKE AND ANOTHER.
ADOLPH P. DEMMER v. SAME.[1]

February 10, 1950.

No. 34,962.

[1]Reported in 42 N. W. (2d) 1.

*Sullivan & Sharood* and *Arthur J. Donnelly,* for appellants.

*Meagher, Geer & Markham* and *Clyde F. Anderson,* for respondents.

MATSON, JUSTICE.

In each of two actions, one in behalf of plaintiff Adolph Demmer's minor daughter Catherine for damages for personal injuries

sustained in a collision between her bicycle and an automobile, and the other by said plaintiff to recover damages for medical and hospital expenses incurred for the daughter, plaintiffs appeal from an order granting defendants judgment *non obstante* pursuant to defendants' motion therefor, or, in the alternative, for a new trial.[3]

On Sunday morning, September 21, 1947, 15-year-old Catherine, accompanied by her 12-year-old brother, Mike, was sent to make a purchase at a grocery store located in the downtown section of North St. Paul on Seventh avenue, a short distance northeast of the intersection of said avenue with Margaret street. At the intersection, Margaret street runs north and south, and Seventh avenue runs, not at a right angle thereto, but in a northeasterly and southwesterly direction. A stationary four-way stop sign, requiring all vehicles to stop, is located in the center of the intersection. The ground is relatively level, so that from any place in the intersection one can see several blocks in four directions. At the time, the street surfaces were dry, the weather was clear, and there was very little traffic. Taking, as we must, a view of the sharply conflicting evidence most favorable to the verdict, it appears that Catherine and Mike were riding their bicycles south on Margaret street until they were a short distance from the intersection crosswalk, when they ran up on the boulevard to the right. Catherine brought her bicycle to a stop and then, at a break in the curb located about a bicycle length north of the crosswalk, she turned her bicycle so that, with the rear wheel on the boulevard and the front wheel on the street, it was facing across the street in a line approximately parallel with the crosswalk. In this position Catherine stood straddling her bicycle, poised for a take-off across the street to reach the sidewalk extending from the opposite curb along the north side of Seventh avenue past the store to which she was going. Just after Catherine had taken this position, a car traveling south on Margaret street,

[3]In re appealability, see Kernan v. St. Paul City Ry. Co. 64 Minn. 312, 67 N. W. 71; Peterson v. Minneapolis St. Ry. Co. 90 Minn. 52, 95 N. W. 751; Snyder v. Minnetonka & W. B. Nav. Co. 151 Minn. 36, 185 N. W. 959. Cf. St. Anthony Falls Bank v. Graham, 67 Minn. 318, 69 N. W. 1077; 39 M. S. A. pp. 276, 277.

owned by a Mr. George Stene, who sat in the front seat thereof next to his son, who was driving, stopped next to the curb facing the intersection in a location between Catherine and the intersection. There is a conflict in the testimony as to whether the front wheels of the Stene car were upon the crosswalk or to the north thereof. At any rate, Catherine, straddling her bicycle, stood just to the rear of the Stene car. She looked out over the intersection, inclusive of Margaret street to the south and Seventh avenue to the southeast. Her view was obtained through the rear window and the windshield of the Stene car. She testified that she saw no cars, although she had a clear view down both streets for several blocks. After making these observations, which included the whole intersection area, without seeing defendants' car or any other car approaching, Catherine, momentarily after the Stene car had started forward, set her bicycle in motion and proceeded across Margaret street along a line parallel with, and slightly north of, the crosswalk. She did not know of the presence of any vehicle until she was struck and found herself lying on the pavement next to the left front door of defendants' car. Neither Catherine nor Mike heard any horn. The car stopped immediately, and defendant Louella Grunke got out and asked, "What happened?" Red paint from the bicycle was found on the car bumper at about its center. The bicycle was lying about five feet in front of the car. It is uncontradicted that Catherine was hit when she was little more than halfway across Margaret street and had therefore entered the northbound traffic channel.

The evidence indicates that defendant Louella Grunke had been driving northeast on Seventh avenue. She stopped before entering the intersection, then proceeded out into the intersection, and had just turned north on Margaret street when the collision occurred. Extending back from the rear wheels of defendants' stopped car were skid marks about 18 inches or two feet long. Both Louella and Stene, Jr., estimated defendants' car speed at from 10 to 15 miles per hour.

Plaintiffs contend that there is evidence from which the jury might properly find defendants negligent. It is argued that Louella Grunke failed to keep a proper lookout, in that the position of the bicycle and the bicycle paint found on the car bumper, following the accident, indicates that Catherine had been almost directly in front of defendants' car when it struck her, and that Louella failed to give a proper warning. The evidence would also justify an inference that Louella failed to keep proper control of her car. Catherine was riding across the street approximately a bicycle length north of the crosswalk. She was found after the collision at a point 35 to 40 feet north of the crosswalk. The jury could reasonably conclude that defendants' car was traveling considerably faster than defendants testified, since the speed of the car had to be sufficient to propel Catherine at least 30 feet forward. Taking the view of the evidence most favorable to plaintiff justifies an inference by the jury that Louella failed to keep a proper lookout, failed to have proper control of her car, and failed to give any warning, and that she was therefore negligent. Kennedy v. Webster, 137 Minn. 335, 163 N. W. 519; Forseth v. Duluth-Superior Transit Co. 202 Minn. 447, 278 N. W. 904; Moore v. Kujath, 225 Minn. 107, 29 N. W. (2d) 883, 175 A. L. R. 1007.

▮▮▮▮▮ Was Catherine guilty of contributory negligence as a matter of law? Pursuant to M. S. A. 169.03 and 169.221, bicycle riders are granted all the rights and are subject to all the duties applicable to the driver of a vehicle under the state highway traffic regulation act, except as to *special regulations* (see § 169.221, subds. 2, 3, 4, 5, 6) and except as to those provisions thereof which by their nature can have no application. Section 169.18, subd. 1, states that upon roadways of sufficient width a vehicle shall be driven upon the right half of the roadway. Section 169.221, subd. 4(a), provides that every person operating a bicycle upon a roadway shall ride as near to the right side thereof as practicable. In undertaking to ride her bicycle from the west curb to the east side of Margaret street, Catherine made herself subject to all the applicable regulations of the state highway act. Immediately before and at the time

of the collision, she occupied the purely vehicular area of the street as distinguished from a sidewalk or a crosswalk. At no time did she follow any authorized traffic channel, either southbound or northbound, but was traveling at right angles thereto. At the moment of impact, she was crossing the northbound traffic lane a short distance north of the crosswalk. It was not only an unusual movement, but one in contravention of the state highway traffic regulation act.[4] Pursuant to § 169.96, Catherine's violation of the act was, however, not negligence *per se,* but only prima facie evidence of negligence. See, LeVasseur v. Minneapolis St. Ry. Co. 221 Minn. 205, 21 N. W. (2d) 522. A statutory violation constituting prima facie evidence of negligence prevails as a controlling evidentiary factor against the violator only so long as there is an absence of evidence tending to show a reasonable ground for such violation or only so long as there is no actual evidence to justify a reasonable assumption that such violation was not negligent under the circumstances and would therefore not reasonably endanger himself or any other person entitled to the protection of the act. Olson v. D. M. & I. R. Ry. Co. 213 Minn. 106, 113, 5 N. W. (2d) 492, 496. The burden of producing such evidence of justification is upon the violator, but the moment such evidence appears from any quarter whatever the prima facie case against the violator not only ceases thenceforth to have any validity, but wholly vanishes from the litigation as an evidentiary factor, and thereupon the burden of going forward with the evidence shifts to the opposing litigant. In the absence of evidence reasonably tending to show that the violator's conduct was not negligent under the circumstances, the prima facie case of negligence remains, and, if such negligence was a proximate cause of the accident, a directed verdict against the violator is in order. Wojtowicz v. Belden, 211

[4] In Carlson v. Peterson, 205 Minn. 20, 284 N. W. 847, we had an unusual movement which was neither specifically authorized nor forbidden by the highway act. In the instant case, regular channels of traffic were prescribed for all vehicles.

Minn. 461, 1 N. W. (2d) 409; Olson v. D. M. & I. R. Ry. Co. 213 Minn. 106, 5 N. W. (2d) 492.

■ In the light of these principles, was there any evidence reasonably justifying Catherine in assuming that her conduct of statutory violation was not negligent under the circumstances? A local police directive, issued through the school which Catherine attended, which authorized and directed children to ride their bicycles on the sidewalk in the business area and specifically on Seventh avenue, was erroneously admitted in evidence. In the absence of statutory authority, no local police or other officer can suspend or modify any provision of the highway traffic regulation act so as to relieve any person from compliance therewith. Riser v. Smith, 136 Minn. 417, 162 N. W. 520; Giacomo v. State Farm Mut. Auto. Ins. Co. 203 Minn. 185, 280 N. W. 653. In granting defendants' motion for judgment *non obstante,* the trial court in effect held that, aside from the erroneously admitted evidence of the police directive, there was no evidence to justify Catherine in reasonably assuming that her conduct was not negligent under the circumstances and that therefore the prima facie case of negligence arising from her statutory violation prevailed and, as a proximate cause of the accident, constituted contributory negligence as a matter of law.

■ Was the trial court correct in its assumption that no other evidence existed to negative the prima facie case of negligence? Before and at the time Catherine started her bicycle across Margaret street from west to east, she looked to her left and to her right out over the intersection to see if any cars were coming, but she saw none. In thus taking the precaution to ascertain if any cars were coming before she attempted to cross the street, she was exercising a certain degree of care. If observation is once made for approaching vehicles before entering a roadway or intersection, the failure to take a second look before entering the roadway or intersection is not necessarily contributory negligence as a matter of law. Norling v. Stempf, 208 Minn. 143, 293 N. W. 250; see the pedestrian case of Reier v. Hart, 202 Minn. 154, 277 N. W. 405. In other words, due care in keeping a lookout for other approaching

vehicles is not to be determined by the number of times the operator of a bicycle or other vehicle looked or by how often, or when, or from where. Bosell v. Rannestad, 226 Minn. 413, 421, 33 N. W. (2d) 40, 45; Kraus v. Saffert, 208 Minn. 220, 225, 293 N. W. 253, 255. The failure to take a second look is an item for the jury's consideration in the light of the surrounding circumstances. Norling v. Stempf, 208 Minn. 143, 293 N. W. 250. At best, only a few seconds after Catherine had started—she had only 20 feet to travel before crossing the center line of Margaret street—she was hit by defendants' car, an approaching vehicle which she had not seen when she looked.

■■■ Was her failure to see defendants' car contributory negligence as a matter of law? The mere failure on the part of one who looks and does not see that which is in plain sight and which might have been seen does not in itself constitute contributory negligence as a matter of law *without regard to the surrounding circumstances.* Moore v. Kujath, 225 Minn. 107, 115, 29 N. W. (2d) 883, 887, 175 A. L. R. 1007. Was defendants' car in plain sight when Catherine looked? Were there any surrounding circumstances which might have distracted her attention or obscured her vision? The Stene car was between her and the intersection. Defendants' car, which had traveled northeast on Seventh avenue—that is to say, it had come from the right of the Stene car—in passing into the intersection preparatory to making a turn to the left to go north on Margaret street, necessarily passed in front of the Stene car. Catherine's view, from her position, was through the Stene car's rear window and the windshield. Whether, at the moment she looked, her line of vision was obscured by the framework of the Stene car and the two passengers in the front seat so that she did not see defendants' vehicle is not clear from the record, even though she thought there was no approaching vehicle. It was a circumstance which could possibly explain her failure to see that which otherwise must have been in plain sight. We cannot say that 15-year-old Catherine from her position behind the Stene car was contributorily negligent as a matter of law either from the standpoint that she

chose to make her observations through the rear window and windshield of the Stene car or that in so doing she failed to see defendants' car. A 15-year-old girl is obliged to use only that degree of care which an ordinarily prudent girl of her age, intelligence, and experience can reasonably be expected to exercise under the same or similar circumstances. McCarthy v. City of St. Paul, 201 Minn. 276, 276 N. W. 1; see, Kelley v. Keller, 211 Mich. 404, 179 N. W. 237. Admittedly we have a very close question on the issue of contributory negligence, but, in the light of the surrounding circumstances, her negligence should be determined not as a matter of law but as a question of fact for the jury.

In each of the actions, the order granting judgment *non obstante* is reversed, and each case is remanded to the trial court for disposition of that part of defendants' motion which relates to a new trial.

Reversed with directions.

UPON PETITIONS FOR REARGUMENT.

On March 31, 1950, the following opinion was filed:

MATSON, JUSTICE.

Our attention is directed to a misstatement of fact in the foregoing opinion. The defendant Louella Grunke, instead of proceeding in a northeasterly direction on Seventh avenue and then across the intersection to turn north on Margaret street, did approach and enter the intersection while she was traveling *north* on Margaret street. This factual correction does not necessitate or justify any other revision of the opinion, since *Catherine's view through the rear window and windshield of the Stene car, down Margaret street or Seventh avenue, was virtually the same.* She testified that she saw no cars approaching on either street.

Plaintiffs strenuously contend that Catherine was not violating the provisions of either § 169.18, subd. 1, or § 169.221, subd. 4(a), when she attempted to ride her bicycle from one side of Margaret street to the other. It is contended that, if Catherine is to be held to be in violation of the state highway act for this movement, then

every person who drives across a street from one alley to the next, or any farmer crossing from his barn to his field across a public highway, or any person coming out of a private driveway who crosses one traffic lane to drive into the other is violating the statute. Plaintiffs cite the following cases to show that such is not the law within this state: Lyford v. Jacob Schmidt Brg. Co. 110 Minn. 158, 124 N. W. 831, and O'Rourke v. Duluth St. Ry. Co. 157 Minn. 187, 195 N. W. 896. These decisions are undoubtedly correct. In the instant case, we have a different situation. The law must be applied to Catherine's *entire traffic movement*. She approached the intersection while proceeding south on Margaret street. Her destination was a store located to her left on Seventh avenue, which runs northeasterly from the intersection. In making this traffic movement with her bicycle, it was necessary for her, in order to comply with the statute, to propel her bicycle (or for that matter any vehicle that she might have occupied) in a southerly direction on the west side of Margaret street until she reached the intersection, and then after stopping and signaling for a left turn, she should have entered the intersection and turned to her left on Seventh avenue until she came opposite the store to which she was going. Her violation was the same as if she had occupied an automobile and had attempted to cross Margaret street at right angles as part of a traffic movement from Margaret street to the store on Seventh avenue. Traffic regulations are to be applied to a traffic movement in its entirety, and not merely to certain isolated fragments thereof without regard to its general direction, purpose, or destination. If Catherine had wished to avoid coverage by the highway act, she should have dismounted and pushed her bicycle across Margaret street.

Defendants assert that this decision revolutionizes the concept of statutory violation. Apparently this fear stems basically from a misconception of the scope and effect of the words "prima facie." A violation of the road laws results only in a prima facie case of negligence. This court has succinctly stated the force of such a

198

· violation in Wojtowicz v. Belden, 211 Minn. 461, 463, 1 N. W. (2d) 409, 410, where we said:

"True, his conduct, although violation of law, was not negligence *per se.* But it was *prima facie* evidence of negligence. So the verdict for defendant was properly directed, *in the absence of evidence reasonably tending to show that the conduct of decedent was not negligent.*" (Italics supplied.)

This principle was reaffirmed in Olson v. D. M. & I. R. Ry. Co. 213 Minn. 106, 5 N. W. (2d) 492. In both cases the court found an absence of such evidence. In the present case, we do not find an absence of evidence to negative a prima facie case of **contributory** negligence.

The applications for reargument are denied.

